# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| ANDREW DIXON | * | CIVIL ACTION NO.  11-2100 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN, LOUISIANA STATE PENITENTIARY | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Andrew Dixon filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on December 5, 2011.  [doc. # 1].  Respondent responded to the petition on October 22, 2012.  [doc. # 14].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction of and sentence for First Degree Murder.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

## BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> Each Friday several employees of Kitchen Brothers of Monroe entrusted John Galloway to cash their paychecks at Regions Bank and to bring the money back to them at Kitchen Brothers. After cashing the checks on Friday, December 19, 2003, John Galloway and his father, Butler Galloway, were returning to Kitchen Brothers on Mississippi Street when their way was blocked by defendant and Lamonte "Kilo" Smiley lying in the road. When John Galloway stopped his truck, defendant got up and ran to the driver's side while Smiley ran to the passenger side of the truck. Defendant shot 64-year-old John Galloway four times in the face, shoulder, and chest with a nine millimeter semiautomatic pistol. After being shot, John Galloway rapidly accelerated his truck into a 10-wheel dump truck in the opposite lane of traffic. After

1

the collision, defendant ran to the truck and removed the bag containing the money from the cashed paychecks. John Galloway died from the gunshot wounds. Butler Galloway, who was 89 years old, died as a result of injuries sustained in the collision.

*State v. Dixon*, 974 So. 2d 793, 796 (La.App. 2 Cir. 2008).

The jury returned a verdict of guilty of First Degree Murder, recommended life imprisonment, and Petitioner was sentenced accordingly.  (R. 644).  His appeal to the Second Circuit Court of Appeal was denied on January 16, 2008.  *Dixon*, 974 So.2d at 793.  On October 10, 2008, the Louisiana Supreme Court denied writs.  *State v. Dixon*, 993 So.2d 1282 (La. 2008).  On April 20, 2009, Petitioner's application for *certiorari* was denied by the United States Supreme Court.  *Dixon v. State*, 129 S.Ct. 1989 (2009).

In February 2010, Petitioner filed an application for Post Conviction Relief ("PCR") in the Fourth Judicial District Court; it was denied on July 23, 2010.  (R. 858).  His application for writs was denied by the Second Circuit on October 1, 2010.  (R. 877).  His writ application to the Louisiana Supreme Court was denied on November 4, 2011.  (R. 879); *see also State ex rel. Dixon v. State*, 75 So.3d 916 (La. 2011).

Petitioner filed the instant petition on December 5, 2011, raising the same claims as those argued on direct appeal and in the PCR proceedings filed thereafter.  *See* [doc. # 1].  Specifically, Petitioner contends: (1) there is insufficient evidence to prove his guilt of First Degree Murder beyond a reasonable doubt; (2) the trial court erred in allowing other crimes evidence to be introduced; (3) the trial court erred in failing to suppress a suggestive identification; (4) the trial court erred by denying Petitioner's motion for a mistrial based on the Prosecutor's comments regarding race; (5) Petitioner was denied the right to confront his accuser in violation of his Sixth and Fourteenth amendment rights; (6) the Prosecution allowed perjured testimony to go uncorrected; and, (7) defense counsel was ineffective for (a) failing to object to the introduction of demonstrative evidence and (b) failing to object to the introduction of opinion testimony of

2

two of the prosecution's lay witnesses.  [doc. # 1-2, P. 19-20].

The matter is now before the undersigned.

## LAW AND ANALYSIS

**I.      Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, ⸺ U.S. ⸺, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision."  *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a

federal *habeas* court may grant the writ only if the state court "identifies the correct governing

legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle

to the facts of the prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.    Petitioner's Claims

### a.    Claim One: Insufficiency of the Evidence

For Petitioner's first claim, he argues that the evidence was insufficient to convict him of First Degree Murder beyond a reasonable doubt.  [doc. # 1-1, P. 10].  In support of this claim, Petitioner maintains that the evidence was insufficient to identify him as the killer of John Galloway.  *Id*.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal *habeas* court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard. *Dixon*, 974 So.3d at 796-98.  The court did not reference each element of the charged crimes, as Petitioner

solely argued (as he does now) that the state failed to prove that he was the person who

committed the murder.  Accordingly, the appellate court looked at the evidence to determine if

the state established Petitioner's identity as the perpetrator.  *See Id.* at 797-98.  First, the court

looked at the testimony of Tiffany Anderson, Lakisha Pimpleton, Robert Weaks, Charles

Donaldson, and Latoya Donaldson, and found:

> [T]hat two men laid down in the middle of Mississippi Street, that those two men
> jumped up when John Galloway's pickup truck stopped in front of them, that a man
> dressed in black pants, black jacket, and red cap ran to the driver's side of the pickup
> truck, fired several rounds from a handgun into the truck, and grabbed a bag out of
> the pickup truck after it crashed into the dump truck.

*Id.* at 797.  Second, the court looked to the testimony of Quintina Henry, in which she identified

Petitioner as the individual who committed the murder:

> Quintina Henry testified that she heard a gunshot when she got off the school bus,
> and she ran to the corner to see what was happening . . . she saw a truck swerve and
> hit a big truck. She then saw a man open the driver's side door of the truck and grab
> a bag. This man then ran through her friend's backyard very close to where she was
> standing. Quintina testified that she saw the man carrying a bag and a silver gun. The
> man ran through the abandoned houses, and the witness ran to her home nearby and
> reported what she had seen to her mother. Quintina testified that the man was
> wearing all black with a red hat. Two weeks later, she picked defendant out of a
> photographic lineup as the man she saw that day. At trial, Quintina also identified
> defendant as the man she had seen that day

 *Id.*  Third, the court looked to the testimony of Edward Green who testified that "he knew there

was going to be a robbery of the truck carrying the money from the cashed paychecks, that he

gave defendant a ride to and from a place close to the crime scene, that defendant was wearing a

black zippered jacket, black pants, and a burgundy-reddish skullcap, and that defendant had a

blue money bag containing more than $ 20,000 after the robbery."  *Id.*  Fourth and finally, the

court considered the testimony of Derrica Green who described the Petitioner as wearing " a

black zippered sweater, black pants, and a burgundy-reddish skullcap on the day of the murder,

that he confessed to her that he shot the driver in the face or chest during the robbery, and that

defendant told her the man he shot may have died." *Id.*

Ultimately, the Louisiana appeals court, applying the *Jackson* standard, found that the "evidence clearly supports the jury's finding of guilty beyond a reasonable doubt." *Id*. at 798.  A review of the state court record shows that the state court's findings were entirely reasonable; *a fortiori*, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable; therefore, Petitioner's claim for relief based on insufficiency of the evidence should be **DENIED.**

   **b.     Claim Two: Other crimes evidence**

For Petitioner's second claim, he alleges that the trial court erred by not declaring a mistrial when evidence of other crimes was admitted through the testimony of Detective Quentin Holmes.  [doc. # 1-1, P. 19].  Specifically, in response to defense counsel question "what information did you develop in regard to Joseph Kemp in connection with this offense?", Detective Holmes stated "[t]hat he [Joseph Kemp] was a drug user and Andrew Dixon and he sold and used drugs together."  (R. 455).

Under Louisiana law, evidence pertaining to a defendant's commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove the defendant's character and thus his subsequent disposition to break the law.  La. C.E. art. 404; *State v. Harrison*, 604 So. 2d 583 (La. 1992). The underlying rationale is that the finder of fact is likely to convict because the defendant is a "bad person" regardless of the strength of evidence against him in the case being tried.  *State v. Gay*, 616 So. 2d 1290 (La. App. 2 Cir. 1993).  However, there are some exceptions to this general rule listed in La. C.E. art. 404, which provides, in pertinent part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of
> a person in order to show that he acted in conformity therewith. It may, however, be
> admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

La. C.E. Art. 404.

Upon motion of the defendant, a mistrial shall be ordered when prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized by La. C. Cr. P. arts. 770, 771, or 775. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.  *State v. Ellis*, 966 So. 2d 139 (La. App. 2 Cir. 2007).  A law enforcement officer is not considered a "court official," and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. *State v. Scott*, 823 So. 2d 960 (La. App. 2 Cir. 2002),

Article 771 sets out permissive grounds for requesting a mistrial when a prejudicial remark is made under grounds that do not require an automatic mistrial under Article 770. Article 775 also sets forth additional permissive grounds for a mistrial, which include, that "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."  Here, Petitioner did not move for a mistrial.  However, the trial court had discretion under Articles 771 and 775 to grant a mistrial in the present case if it viewed the statement of Detective Holmes to be so prejudicial that it made it impossible for defendant to have a fair trial.

Detective Holmes' testimony regarding Petitioner "using and selling drugs" was elicited by defense counsel, not the prosecution.  Moreover, as the appellate court observed "the purpose of [defense counsel's] question is unclear," making it difficult to determine if this testimony falls within an exception to La. C.E. art. 404.   *See Dixon*, 974 So. 2d at 801.  However, Detective Holmes' statement was not purposely uttered to prejudice Petitioner, and therefore, does not implicate La. C.E. art. 404.  Additionally, because of the overwhelming evidence presented by the prosecution discussed *supra*, Petitioner was not prejudiced or deprived of a fair trial.  Accordingly, the trial court acted properly within its discretion by not declaring a mistrial, and therefore, Petitioner's second claim should be **DENIED**.

> **c.      Claim Three: Suggestive Identification**

In Petitioner's fourth claim, he argues that "the trial court erred in failing to suppress the suggestive [in-court] identification" by Quintina Henry.  [doc. # 1-1, P. 19].  Specifically, Petitioner alleges that Ms. Henry was unduly focused on him because the trial court ordered Petitioner to remove his glasses.  *Id.*  The Louisiana Second Circuit Court of Appeal sets forth the facts surrounding Ms. Henry's in-court identification of Petitioner:

> When Quintina was first asked if she could identify the person she saw that day inside the courtroom, she said nothing. The prosecutor then asked if the person she saw that day wore glasses, and she said no. The prosecutor then asked Quintina if she remembered identifying someone in the photographic line-up as the person she saw that day, and she said yes. The state then introduced the photographic line-up, which showed that Quintina had identified defendant as the person she saw that day and that she made the identification two weeks after the offense. Detective Holmes testified that earlier he had shown Quintina a photographic line-up which did not contain defendant's photograph and that she did not identify anyone as the perpetrator.
>
> Outside the presence of the jury, the prosecutor requested that defendant remove the glasses he was wearing during Quintina's testimony. Defense counsel objected that this was "suggestive identification." Defense counsel cross-examined Quintina, who testified that she remembered defendant's face when he was asked to remove his glasses. She testified that she had not seen defendant's face on television prior to coming to court to testify. On re-direct examination, Quintina testified that the picture of the person she identified from the photographic line-up was the same

person she saw on the day of the offense and that the person in the picture was not
wearing glasses at the time of the offense.

*Dixon*, 974 So. 2d at 802.

Under Louisiana law, the standard for the admissibility of an in-court identification is
whether, under the totality of the circumstances, the suggestive identification procedure led to a
substantial likelihood of irreparable misidentification.  *State v. Jones*, 658 So.2d 307 (La. App. 1
Cir. 1995).  "When a suspect is the only one presented for identification, this renders the
identification procedure subject to further inquiry.  However, if the identification is otherwise
reliable, the evidence is admissible."  *State v. Walker*, 576 So.2d 1202 (La. App. 5 Cir. 1991).
The reliability of identification testimony is normally measured by the factors set out in the
Supreme Court case of *Manson v. Brathwaite*, 432 U.S. 98 (1977).  These factors include "the
opportunity of the witness to view the criminal at the time of the crime, the witness' degree of
attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated
at the confrontation, and the length of time between the crime and the confrontation."  *Id.* at 114
(citing *Neil v. Biggers*, 409 U.S. 188, 199-200, (1972)).

In the instant case, Ms. Henry's testimony indicated she witnessed Petitioner grab a bag
out of the victim's truck, and then run adjacent to her as he fled the scene of the crime carrying
both a firearm and a bag.  (R. 191, 194).  Moreover, Ms. Henry even testified that she chased
Petitioner as he fled "toward an abandoned house."  (R. 194).  Thereafter, she positively identified
him during a photo lineup less than two weeks after witnessing Petitioner flee from the scene of
the crime.  (R. 192).  Finally, Detective Holmes testified that Ms. Henry did not pick anyone out
of a photographic line-up when Petitioner's photograph was absent.  Under the totality of the
circumstances, the facts do not suggest any substantial likelihood of misidentification by Ms.
Henry.  Accordingly, Petitioner's third claim should be **DENIED**.

### d.    Claim Four: Prosecutor's comments regarding race

Next, Petitioner argues that the trial court erred by denying his "motion for a mistrial

based on the prosecutor's comments regarding race."  [doc. # 1-1, P. 30].  During the

Prosecution's closing argument, the following exchange took place regarding the testimony of Mr.

Green:

> BY MR. SYLVESTER: But when he testified Mr. Green had more to say. Mr.
> Green said first of all -- I don't know how old Mr. Green is. But you all saw him.
> He's a young black man. Young black men can tend to be very volatile. Y'all
> heard Mr. Perkins [defense counsel] who is a white man --
>
> BY MR. PERKINS: Mistrial.
>
> BY MR. SYLVESTER: And what Mr. Perkins --
>
> BY THE COURT: One moment. Go ahead.
>
> BY  MR. SYLVESTER: Did you say go ahead, judge?
>
> BY THE COURT: Yes, sir.
>
> BY MR. SYLVESTER: What Mr. Perkins did --
>
> BY MR. PERKINS: Note our objection, Your Honor.
>
> BY THE COURT: It's noted.
>
> BY MR. SYLVESTER: -- was stand right there and call him a liar. He didn't call
> him a liar one time. He didn't call him a liar two times. He consistently called him
> a liar. Which would probably generally set somebody like that off. What did he
> do? He couldn't be intimidated. He was here to tell y'all something. He was here
> to tell y'all what happened. He was here to tell you all what part he played in it. . .

*Dixon*, 974 So. 2d at 803.

Under La. C.Cr.P. art. 770(1), a mistrial shall be granted upon motion of the defendant

when a remark or comment is made within the hearing of the jury by the judge, district attorney,

or a court official during trial or in argument and that remark refers to directly or indirectly to

"[r]ace, religion, color or national origin, if the remark or comment is not material and relevant

10

and might create prejudice against the defendant in the mind of the jury."  The Louisiana Supreme Court stated that the "purpose of this mandatory prohibition . . . is to avoid the use of racial prejudice to obtain convictions."  *State v. Wilson*, 404 So. 2d 968, 970 (La. 1981).  However, as the appellate court observed,  not every reference to race requires the granting of a mistrial. *State v. King*, 573 So. 2d 604 (La. App. 2 Cir. 1991) (citing *State v. Jenkins*, 340 So. 2d 157 (La. 1976)).

Mr. Sylvester's statement that "[y]oung black men can tend to be very volatile" was perhaps in poor taste, even coming from a prosecutor who is himself black; however, in context, it was neither immaterial nor was it irrelevant.  Mr. Sylvester was simply attempting to reaffirm  Mr. Green's credibility by reminding the jury that Mr. Green was a young black man and defense counsel (an older white man) was attempting to rattle him by repeatedly calling him a liar. Therefore, since Mr. Sylvester's statement was not directed at Petitioner, as it went to a witness's credibility and demeanor, it could not have created prejudice against the defendant in the mind of the jury.  Accordingly, Petitioner's fourth claim should be **DENIED**.

      **e.**      **Claim Five: Confrontation clause**

In Petitioner's fifth claim, he argues that he was denied the right "to confront and face his accuser when Detective Quentin Holmes testified that he had received information from a Darren Wyatt leading to the identity and arrest of Mr. Dixon" in violation of the Confrontation Clause. [doc. # 1-1, P. 31].  Specifically, Petitioner points to the portion of the Detective's testimony in which he testified that Darren Wyatt led him to the Petitioner, stating:

Q.      Did you have an opportunity to talk with a Darren Wyatt?

A.      Yes. I did.

Q.      And after talking to Darren Wyatt were you able to develop a suspect?

A.      Yes. I was.

Q.      Were you able to develop the home of that suspect?

A.      Yes. I was.

Q.      And where was that?

A.      In the Conroe, Houston, Texas area..

Q.      And once that was done were you able to contact and get a photograph of that
individual?

A.      Yes. I did.

Q.      The suspect was developed after talking to Mr. Wyatt was who?

A.      Andrew Dixon

(R. 430).  Respondent asserts that this testimony is not hearsay, as it "was not offered for the truth
of the matter asserted, but merely to explain the officer's leads and procedures utilized by
investigators in order to justify their subsequent conduct and course of the investigation."   [doc. #
14, P. 20-21].  The undersigned agrees.

Evidentiary errors of state law are generally not cognizable in federal *habeas* review,
unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding.
*Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of
prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical,
and highly significant' role in the jury's determination." *Id*.  Thus, in order for Petitioner to
obtain relief on his claim that the trial court testimony admitted inadmissible hearsay under
Louisiana law, he would have to prove that the trial court's erroneous admission of this testimony
was so prejudicial that it denied him the right to a fair proceeding.  Petitioner cannot make this
showing because he cannot demonstrate that the admission of the Detective's testimony was
erroneous under state law in the first place.

"Hearsay is a statement, other than one made by the declarant while testifying at the

12

present trial or hearing, offered in evidence to prove the truth of the matter asserted."  La. C.E. art. 801(c).  The Louisiana Supreme Court has repeatedly held that a Police Officer, in explaining his own actions, may refer to statements made by other persons involved in the case.  As set forth in *State v. Calloway*, the statements are "admitted not to prove the truth of the assertion . . . but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the arresting officers.  The testimony is therefore not hearsay."  *State v. Edwards*, 406 So. 2d 1331, 1349 (La. 1981) (citing 324 So. 2d 801, 809 (La.1976)); s*ee also State v. Monk*, 315 So. 2d 727 (La. 1975); *State v. Bluain*, 315 So. 2d 749 (La. 1975); *State v. Carvin*, 308 So. 2d 757 (La. 1975).

In this case, the Detective's testimony regarding Mr. Wyatt's was not being used to identify the Petitioner, but served to explain the Detective's procedures and course of investigation or, in the words of *Calloway* and progeny, "explain the sequence of events leading to the arrest of the defendant from the viewpoint of the arresting officers."  *Calloway*, 324 So.2d at 809.  The Petitioner's confrontation right is only implicated when the out-of-court statement is used to prove the truth of the matter asserted.  *Tennessee v. Street*, 471 U.S. 409, 414 (1985).  Accordingly, Petitioner's claim for relief on this basis should also be **DENIED**.

     **f.**    **Claim Six: Perjury**

Next, Petitioner alleges that the "prosecution allowed perjured testimony to go uncorrected, when one of it's key witnesses, Quintina Henry, testified falsely" in violation of his Fourth and Fourteenth Amendment rights.  [doc. # 1-1, P. 35].  Specifically, Petitioner asserts that Ms. Henry's testimony is conflicting because she initially testified that she "ran north behind Mr. Dixon and then took up a position behind a tree[;]" however, later testified that "she was 'in a ditch'" when witnessing Petitioner flee from the scene.  *Id*. at 37.

Constitutional due process forbids the State from knowingly using, or failing to correct, perjured testimony.  *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Hafdahl v. Johnson*, 251

F.3d 528, 532-33 (5th Cir. 2001).  To prove that the State denied Petitioner due process of law by relying on perjured testimony, Petitioner must prove that (1) a witness testified falsely; (2) the State knew the testimony was false; and, (3) the testimony was material.  *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000).  Contradictory testimony among witnesses or inconsistencies within a witness's trial testimony are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjury.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

Petitioner has not met this burden because he fails to demonstrate that Ms. Henry's testimony was false, that the prosecution knew it was false, and the materiality of where Ms. Henry was standing when she observed Petitioner flee from the scene.  Petitioner merely points to inconsistencies in the witness' testimony.  A federal court in a *habeas corpus* proceeding cannot redetermine the credibility of witnesses when the demeanor of the witnesses was not observed by the federal court.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Rather, "[t]he reviewing court must respect the province of the [factfinder] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the [factfinder] resolved all conflicts in a manner that supports the verdict."  *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997)(quoting *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995)).

Petitioner fails to show that the state courts' decisions rejecting his perjury claim were contrary to, or an unreasonable application of, clearly established federal law, or that they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §§ 2254(d)(1), (2).  Therefore, no *habeas* relief is merited on Petitioner's sixth claim.

**g.** **Claim Seven: Ineffective assistance of trial counsel**

In Petitioner's final two claims, he asserts that his trial counsel was ineffective for "failing to object to the introduction of demonstrative evidence that had nothing to with the case at bar"

14

and for "failing to object to the opinion testimony of prosecution's lay witness."  [doc. # 1-1, P. 38, 41].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally

15

unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

### 1.    Failure to object to the introduction of demonstrative evidence

Petitioner argues that his trial counsel was ineffective for failing to object to the introduction of a firearm. [doc. # 1-1, P. 38]. Specifically, during the testimony of Michael Stelly, a firearms examiner working for the North Louisiana Crime Lab, the Prosecution "marked for identification," but did not introduce a "Star brand pistol, model 30MI, serial number 1718005." (R. 282). Mr. Stelly further testified that this firearm was submitted to the crime lab in order to determine if the bullets fired at the crime scene came from this particular weapon. *Id.*

To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901. In *State v. Manieri*, 378 So. 2d 931 (La. 1980), the Louisiana Supreme Court held that it was error to allow the introduction of a weapon which was "similar" to the weapon used during the commission of the charged crime. It reasoned that "the jurors naturally tend to infer a connection between the weapon and the [crime] simply from a mere viewing of the material object, although such a connection is not proved." *Id.* at 933. In that case, the State introduced knives similar to the knife used to kill the victim. However, the court found that the erroneous introduction of the knives did not prejudice the defendant because there was no attempt to associate the knives introduced by the State with the knife used by the defendant. *Id.*

16

Additionally, the Louisiana Second Circuit Court of Appeal has held that the Prosecution may offer a firearm "solely for demonstrative purposes of showing that the victims could hear the weapon being clicked." *State v. Lee*, 868 So. 2d 256, 266 (La.App. 2 Cir. 2004).

In this case, the firearm was never introduced into evidence, it was simply used as a demonstrative aid. *See* (R. 94). Moreover, the prosecution never attempted to associate this particular firearm with Petitioner, as Mr. Stelly even testified "the nine millimeter Star pistol did not fire the bullets" found at the crime scene. (R. 282). The record reveals that Mr. Stelly simply used the weapon to demonstrate to the jury how bullets are fired, and how the resulting bullet casings get their particular markings. Therefore, Petitioner's first claim of ineffective assistance of counsel lacks merit, both because he has failed to show that his attorney's actions fell outside the wide range of professionally competent assistance and because he is unable to show that the prosecution's use of the firearm caused him any actual prejudice.

### 2.      Failure to object to lay witnesses

In Petitioner's final claim, he alleges that his trial counsel was ineffective for failure to object when the state went beyond Charles Donaldson's qualifications as a lay witness with the following colloquy:

> Q.      And then you said you weren't sure that that was him, the guy in the SUV. But after you got to that point, you didn't see him anymore did you?
>
> A.      No, sir.
>
> Q.      In your opinion that was him that was in the SUV?
>
> A.      Yes, sir. In my opinion.
>
> Q.      And you said he was fidgeting?
>
> A.      Yes, sir.

(R. 171-72). Additionally, Petitioner points to the testimony of Latoya Donaldson, in which she

stated:

> Q.   In your opinion was that the person that you saw in the backseat of that truck?
>
> A.   I believe so.
>
> Q.   But you couldn't tell for sure because you couldn't see them. Right?
>
> A.   No.

(R. 179).  Petitioner's claim is specific to the portions of testimony in which both witnesses gave their opinions.

As a general matter, La. Code Evid. Ann. art. 701 permits the trial court to allow opinion testimony by a lay witness when the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of his or her testimony or to the determination of a fact in issue. Furthermore, a witness may testify to a matter based on personal knowledge.  La. Code Evid. Ann. art. 602.  Moreover, testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. La. Code Evid. Ann. art. 704.

The opinion rule, "should not be applied so strictly as to exclude firsthand testimony that may be several inferences removed from raw sense perceptions, yet more helpful to the jury than mere recitation of such perceptions." *State v. Casey*, 775 So. 2d 1022, 1033 (La. 2000) (quoting *State v. Short*, 368 So. 2d 1078, 1081 (La. 1979)).  Thus, if the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well*.  State v. Roche*, 341 So. 2d 348, 352 (La. 1976) (citing *State v. Maines*, 183 La. 499, 164 So. 321 (1935); *State v. Willis*, 181 La. 154, 158 So. 826 (1935)).  Therefore, the court must ask two pertinent questions to determine whether the trial court properly allowed such testimony: (1) was the testimony speculative opinion

evidence or simply a recitation of inferences from fact based upon the witness's observations; and
(2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute
reversible error.  *Casey*, 775 So. 2d at 1033 (citing *State v. Alexander*, 430 So. 2d 621, 624 (La.
1983)).

Here, the witnesses' statements were not speculative, but were simply a natural inference
from what they personally observed.  Mr. Donaldson testified that he saw Petitioner take a bag
from the victim's truck, flee the scene, run between houses, and "in his opinion" he believed he
saw the same individual in the backseat of an SUV "because the person that was in the back was
fidgety.  Also had on a hat that looked like the person had on when they left from the – when I
was out watching that had grabbed the bag."  (R. 147-49).  Mrs. Donaldson testimony mirrors that
of her husband; however, the record reveals that she was less confident that the person in the back
seat of the SUV was Petitioner.  It is clear that both of the witnesses' testimony complies with La.
Code Evid. Ann. art. 701 as they testified rationally based on their perceptions of what they
personally observed.  Mr. Donaldson even provided two separate reasons for believing Petitioner
was the silhouette he observed in the SUV.  Moreover, Mrs. Donaldson ultimately did not give an
opinion as to whether she observed Petitioner in the back seat of the SUV because of her
uncertainty. Therefore, defense counsel had no grounds for making a  La. Code Evid. Ann. art.
701 objection to either witnesses' testimony, and accordingly, Petitioner's ineffective assistance
of counsel claims should be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Andrew
Dixon [doc. # 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this

recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

      THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of November, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE